UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————
                                                    )
FC INVESTMENT GROUP LC                              )
                                                    )
and                                                 )
                                                    )
LAWRENCE JAY EISENBERG,                             )
                                                    )
                    Plaintiffs,                     )
                                                    )
        v.                                          )   Civil Action No. 04-1939 (PLF)
                                                    )
IFX MARKETS, LTD.,                                  )
                                                    )
                    Defendant.                      )
—————————————————————)


OPINION

        This matter is before the Court on defendant's motion to dismiss pursuant to Rule

12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and Rule

12(b)(6) for failure to state a claim upon which relief can be granted.  Upon consideration of the

motion to dismiss, the opposition, the reply, and all other materials submitted by the parties, the

Court concludes that it lacks jurisdiction over the sole defendant, IFX Markets, Ltd. ("IFX").

The amended complaint therefore is dismissed in its entirety.


I. BACKGROUND

        Plaintiffs' claims arise out of a series of investments made by plaintiffs with non-

party Titan Global Strategies, Ltd. ("Titan").  The investments were made initially by plaintiff

Lawrence Eisenberg, a resident of the State of Maryland, and later by plaintiff FC Investment

Group LC ("FCIG"), a Maryland limited liability company with its principal place of business in

the District of Columbia.  Amended Complaint ("Am. Compl.") ¶¶ 1-2.  Plaintiffs allege that

defendant IFX,  a United Kingdom corporation, conspired with Titan to fraudulently induce

plaintiffs to invest millions of dollars in Titan, which turned out to be no more than a pyramid

scheme through which investors' money was funneled to other illegitimate business.  See id.

¶¶ 3, 6.

Plaintiffs allege that the scheme began in September 1998, at which time plaintiff

Eisenberg and Milan Martinic, Titan's owner, discussed investment opportunities with Titan.  See

Am. Compl. ¶ 7.  Eisenberg was informed by Martinic at that time that all trades managed by

Titan would be made by non-party IG Group, PLC ("IG"), a currency trader.  See id. ¶ 7.  Based

on these representations and others made in Titan's "information brochure," which was sent to

Eisenberg in the District of Columbia, Eisenberg made an initial investment of $10,000 with

Titan.  See id. ¶ 8.  In April 2001 Eisenberg formed FCIG to "facilitate his and other investors

dealings with Titan."  See id. ¶ 11.  Nevertheless, Eisenberg apparently continued to invest on his

own behalf, as well as on FCIG's.  See id. ¶ 14.

Plaintiffs made several subsequent investments with Titan, although the dates and

amounts of the investments are unclear from the amended complaint.  The amended complaint is

internally inconsistent with regard to the extent of Titan's alleged fraud.  See Am. Compl. ¶ 6

(alleging that defendant and Titan defrauded plaintiffs of $9.5 million); ¶¶ 8-9 (describing

investments of $10,000, approximately $1.065 million, and $400,000 between 1998 and 2003,

for a total of roughly $1.5 million); ¶ 12 (alleging total investments of $5 million as of October

2003), ¶ 37 (alleging total loss of $5 million in investment funds).  Thus, plaintiffs' alleged total

investments with Titan vary depending on which part of the amended complaint is credited.

2

Plaintiffs give reasonably reliable dates for only two investments: the first for $10,000 in or around September 1998, see id. ¶ 8, and the last for $2 million made in November 2002. See id. ¶ 23. Plaintiffs' failure to properly and more specifically allege facts that are entirely under their control serves only to obfuscate any alleged wrongdoing on the part of defendant.

Beginning sometime in 2001 and ending sometime in 2003, Titan sent account statements to Eisenberg and FCIG at their shared business address in the District of Columbia, allegedly showing large earnings. See Am. Compl. ¶ 13. Meanwhile, in "early 2001" Titan named Charles Knott as investment advisor and point of contact for Eisenberg and FCIG. Id. ¶ 14. Knott traveled to the District of Columbia an unspecified number of times to meet with Eisenberg on unspecified dates "in 2001 and 2002." Id.

At an unspecified time "[i]n or about 2002" Knott informed FCIG that defendant IFX would assume responsibility for management, investment, and brokerage service from IG. Am. Compl ¶ 15. Sometime thereafter, Christopher Cruden, an IFX employee, developed a professional relationship with Eisenberg and began calling him "regularly to offer assurances about IFX's role" in Titan's investment program. Id. In addition, both Cruden and Knott contacted Eisenberg to invite him to London for a presentation at IFX's offices. See id.

In November 2002, Eisenberg accepted Cruden and Knott's invitation and attended an IFX/Titan presentation at IFX's offices in London. See Am. Compl ¶ 18. Based on the PowerPoint presentation made to Eisenberg at the London meeting, FCIG made a final investment of $2 million with Titan. See id.

In late 2003, Eisenberg attempted to close his account and withdraw the balance of his funds, but he was rebuffed. See Am. Compl. ¶ 25. In spite of assurances by Titan board

members Milan Martinic and Lawrence Lichtenstein that Titan would return Eisenberg's funds, which they said were in a U.S. bank account, Eisenberg has yet to receive his requested refund. See id. ¶ 26.  Plaintiffs allege that Titan and Martinic used Eisenberg and FCIG's investments to fund a number of fraudulent ventures and for personal use.  See id. ¶ 27.

Plaintiffs bring four claims against defendant: intentional fraud/fraud in the inducement (Count I), see Am. Compl. ¶¶ 33-37; civil conspiracy (Count II), see id. ¶¶ 38-41; civil aiding and abetting (Count III), see id. ¶¶ 42-46; and conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count IV), see id. ¶¶ 47-59.  Because the Court finds that it lacks personal jurisdiction over defendant, it dismisses the amended complaint.


## II. DISCUSSION

Defendant moves to dismiss the amended complaint for lack of personal jurisdiction in this Court pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  See Motion to Dismiss ("Mot.") at 6.  Defendant argues that plaintiffs have failed to demonstrate that this Court may exercise general, specific, conspiracy, or RICO jurisdiction over it.  See id. at 6, 8, 12.  Each of these theories will be considered in turn.  Upon careful consideration of the parties' briefs, arguments, and other materials, the Court concludes that it lacks personal jurisdiction over defendants and therefore dismisses the complaint.


### A.  Rule 12(b)(2) Standard of Review

Plaintiffs bear the burden of establishing personal jurisdiction over defendant.  In order to meet their burden, plaintiffs must allege specific facts on which personal jurisdiction can be based; they cannot rely on conclusory allegations.  See GTE New Media Services, Inc. v.

4

Ameritech Corp., 21 F. Supp. 2d 27, 36 (D.D.C. 1998), *remanded on other grounds sub nom*

GTE New Media Services, Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000); Blumenthal

v. Drudge, 992 F. Supp. 44, 53 (D.D.C. 1998); Comsat Corp. v. Finshipyards S.A.M., 900

F. Supp. 515, 520 (D.D.C. 1995).  When considering personal jurisdiction, the Court need not

treat all of the plaintiffs' allegations as true.  Instead, the court "may [also] receive and weigh

affidavits and other relevant matter to assist in determining the jurisdictional facts."  Jung v.

Assoc. Amer. Med. Coll., 300 F. Supp. 2d 119, 127 (D.D.C. 2004) (quoting United States v.

Philip Morris Inc., 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000)); see also Brunson v. Kalil &

Co., 404 F. Supp. 2d 221, 223 (D.D.C. 2005).

### B. General Jurisdiction: "Doing Business" under D.C. Code § 13-334.

Plaintiffs first argue that this Court has general jurisdiction over IFX pursuant to

D.C. Code § 13-334.  The statute reads in pertinent part:

> In an action against a foreign corporation doing business in the
> District, process may be served on the agent of the corporation or
> person conducting its business, or, when he is absent and can not
> be found, by leaving a copy at the principal place of business in the
> District, or, where there is no such place of business, by leaving a
> copy at the place of business or residence of the agent in the
> District, and that service is effectual to bring the corporation before
> the court.

D.C. Code § 13-334(a).  The statute is facially concerned with service of process, but it "has been

construed to provide a general jurisdictional grant under certain circumstances."  Atlantigas

Corp. v. Nisource, Inc., 290 F. Supp. 2d 34, 44 n.12 (D.D.C. 2003).

### 1. Standard

Under the doctrine of general jurisdiction, a court may exercise personal jurisdiction over a non-resident defendant when that non-resident defendant has engaged in "continuous and systematic" general business contacts in the forum, notwithstanding the fact that those contacts do not relate to the underlying cause of action.  See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415 (1984); see also Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 509 (D.C. Cir. 2002) (same); El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 675 (D.C. Cir. 1996) (contacts must be "continuous and substantial").  Jurisdiction under Section 13-334(a) requires that such systematic contacts demonstrate "a 'continuing corporate presence in the forum . . . directed at advancing the corporation's objectives.'"  El-Fadl v. Central Bank of Jordan, 75 F.3d at 675 (quoting AMAF Int'l Corp. v. Ralston Purina Co., 428 A.2d 849, 851 (D.C. 1981)).  The reach of such general jurisdiction in the District of Columbia is "coextensive with the reach of constitutional due process."  Gorman v. Ameritrade Holding Corp., 293 F.3d at 510 (citing Hughes v. A.H. Robins Co., 490 A.2d 1140, 1148 (D.C. 1985)).

### 2. Defendant's Website as "Doing Business"

Plaintiffs concede that defendant has no office in the District of Columbia.  They rely instead on IFX's "interactive website business" as a basis for the Court's exercise of personal jurisdiction.  See Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss ("Opp.") at 7.  In the context of general jurisdiction, the issue therefore is whether defendant's website constitutes "doing business" such that the Court may exercise jurisdiction under D.C. Code § 13-334(a).  The Court concludes that it does not.

In Gorman v. Ameritrade Holding Corp. the D.C. Circuit explained that jurisdiction under Section 13-334(a) may be based on a defendant's website "contact" with the District of Columbia when the contacts with the District are "continuous and systematic."  See 293 F.3d at 512.  The court went on to explain that the "'mere accessibility of the defendants' websites . . . does not 'establish the necessary 'minimum contact' with this forum.'" Gorman v. Ameritrade, 293 F.3d at 512 (citing GTE New Media Servs. Inc. v. Bell South Corp., 199 F.3d at 1350).  An "'essentially passive' website through which customers merely access information" is not enough.  Id. at 513 (citing GTE New Media Servs. Inc. v. Bell South Corp., 199 F.3d at 1348).

In this case, both the nature of defendant's website and the extent of its use in the District of Columbia suggest that the Court has no basis upon which to assert jurisdiction under Section 13-334(a).  Defendant's website falls in the middle ground between "merely informational," Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d at 48, and fully "active."  See Gorman v. Ameritrade Holding Corp., 293 F.3d at 512.  Defendant's website is considerably less "active" than the one described in Gorman, where customers were able to open accounts, transmit funds to their accounts, and buy and sell securities online through Ameritrade's website.  See id. at 513.  The defendant's website, by contrast, does not permit online registration.  Instead, interested parties must download an application form, sign it, and return it "along with required identification documents that must be 'certified by an attorney, a lawyer, an embassy authority, consulate or high commission of the country of issue.'"  Mot. at 7-8; but see Obabueki v. I.B.M., Inc., Civil No. 99-11262, 2001 U.S. Dist. LEXIS 11810 (S.D.N.Y. Aug. 14, 2001) (holding website with downloadable application sufficient to establish contacts).

7

Defendant's website has more in common with the website considered by this Court in Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34.  In Atlantigas defendant operated a website through which natural gas traders were able to schedule natural gas deliveries.  See id. at 51.  Because Atlantigas's customers could complete transactions through the company's website, this Court acknowledged that the site was not "wholly passive," but nevertheless rejected the website as a basis for exercising general jurisdiction.  Id.  Similarly, the mere fact that defendant's website may, after a complicated offline registration process, be used for certain active online transactions does not necessarily provide the Court with general jurisdiction.

More importantly, as this Court noted in Atlantigas, "the question is not whether District of Columbia residents 'can' transact business in the District with the non-resident defendant though the defendant's website, but if they actually 'do' engage in sustained business activities in a continuous and systematic way."  Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d. at 52 (citing Gorman v. Ameritrade Holding Corp., 293 F.3d at 512-13).  Thus, this Court held, "contracting through [a web] site . . . with one District of Columbia company over an eight-month period . . . simply do[es] not demonstrate a systematic and continuous contact with the forum."  Id. at 50.  In this case, plaintiffs allege that only one District of Columbia resident has ever opened an online account with the defendant, and it was open for just six months in 2003. See Mot. at 8; Opp. at 8.  As in Atlantigas, for the Court to assert general jurisdiction over the defendant based on a single, short-lived, and since-terminated customer relationship would "stretch the concept of general jurisdiction beyond what either the statute or due process permits."  Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d at 52.

Plaintiffs next point to the "demo" feature of defendant's website, which, plaintiffs allege, allows those who download it "to practice using IFX's services over the internet."  See Opp. at 8.  Plaintiffs argue that this feature provides the kind of "continuous and systematic" contacts that existed in Gorman.  See id. at 9.  The Court disagrees with this analogy. In Gorman, the D.C. Circuit noted the wide range of services Ameritrade's website provided to customers online.  The ease with which customers could make use of Ameritrade services made "it possible for [defendant] to have contacts with the District of Columbia that are 'continuous and systematic' to a degree that traditional foreign corporations can never approach."  Gorman v. Ameritrade Holding Corp., 293 F.3d at 513.  By contrast, the "demo" available on IFX's website is just that – a demonstration – and it does not provide a "service" in the sense relevant under the Court's analysis in Atlantigas.  Although no single factor is dispositive to the Court's analysis, the factors present in Ameritrade – where accounts could be opened, money changed hands, and securities were bought and sold – surely distinguishes the website in that case from IFX's demo. The demo may be more than "passive," but it nevertheless is "merely informational" in a way that Ameritrade's was not.  See Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d at 48.  The Court's conclusion on this issue is narrow and fact-specific: the Court declines plaintiffs' invitation to extend general jurisdiction over a non-resident party for an online "demo" program that lacks any of the features this Court has previously found sufficient to establish general jurisdiction.

*C.  Specific Jurisdiction under Section 13-423: the District of Columbia Long-Arm Statute*

Plaintiffs next argue that the Court may exercise specific jurisdiction over defendant by virtue of the "regular" phone calls made by a non-resident, alleged to be an IFX agent, to the in-forum plaintiffs.  See Opp. at 10-11.  Rather than direct the Court to the proposed statutory bases for their jurisdictional argument, plaintiffs instead erroneously rely on four cases from other jurisdictions, none of which are binding on this Court.  See Opp. at 10-11.  Nevertheless, the Court will assume that plaintiffs are attempting to assert jurisdiction under D.C. Code § 13-423(a)(1), based on their argument that Cruden's phone calls amount to "transacting business" in the District of Columbia.  See Opp. at 10.[1]

1. Standard

Section 13-423(a)(1) of the District of Columbia Code provides that "[a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's transacting any business in the District of Columbia."  D.C. CODE § 13-423(a)(1).  To establish personal jurisdiction under this subsection, a plaintiff must demonstrate that: (1) the defendant transacted business in the District of Columbia; (2) the claim arose from the business transacted in the District; (3) the defendant had minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice."  Atlantigas Corp. v. Nisource,

---

[1]     The Court finds that subsection (a)(1) is the only subsection of the D.C. long-arm statue that is arguably applicable to the facts as presented by plaintiffs.  The Court concludes that "the remaining provisions of the D.C. long-arm statute . . . are manifestly inapplicable to the present action."  Rahal v. Paris Sec. Corp., 1982 U.S. Dist. LEXIS 17867, *4 (D.D.C. Oct. 27, 1982).

Inc., 290 F. Supp. 2d at 43 (quoting Dooley v. United Technologies Corp., 786 F. Supp. 65, 71

(D.D.C. 1992)).  This subsection of the long-arm statute permits the exercise of personal

jurisdiction to the full extent permitted by the Due Process Clause of the Constitution.  See id.;

see also First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1377 (D.C. Cir. 1988); Envtl.

Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc., 355 A.2d 808, 810-11 (D.C. 1976) (en

banc).  The constitutional touchstone of the due process determination is "whether the defendant

purposefully established minimum contacts in the forum state," Asahi Metal Industry Co. v.

Superior Court, 480 U.S. 102, 108-09 (1987) (internal citations and emphasis omitted), or

"purposefully availed itself of the privilege of conducting business in the forum state," and

whether the defendant's conduct in connection with that forum is such that it "should reasonably

anticipate being haled into court there."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75

(1985) (internal citation and quotation omitted).

 "While the long-arm statute is interpreted broadly and factual disputes are to be

resolved in favor of the plaintiff, plaintiff must allege some specific facts evidencing purposeful

activity by the defendant in the District of Columbia by which it invoked the benefits and

protections of the District's laws." Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d at 44

(citing First Chicago Int'l v. United Exch. Co., 836 F.2d at 1378); see also Edmond v. U.S.

Postal Serv. Gen. Counsel, 949 F.2d 415, 428 (D.C. Cir. 1991); United States v. Phillip Morris,

Inc., 116 F. Supp. 2d at 121.  In addition, because a court in the District of Columbia may

exercise specific jurisdiction over a non-resident defendant "only [for] a claim for relief arising

from the specific acts enumerated in [the statute] . . . ," D.C. CODE § 13-423(b), plaintiffs'

jurisdictional allegations must arise from the same conduct of which it complains.  See

11

Atlantigas Corp. v. Nisource Inc., 290 F. Supp. 2d at 44; see also Willis v. Willis, 655 F.2d 1333, 1336 (D.C. Cir. 1981); Dooley v. United Technologies Corp., 786 F. Supp. at 71; LaBrier v. A.H. Robins Co., Inc., 551 F. Supp. 53 (D.D.C. 1982).  "The claim itself must have arisen from the business transacted in the District of Columbia or there is no jurisdiction."  Novak-Canzeri v. Al Saud, 864 F. Supp. 203, 206 (D.D.C. 1994).

### 2. Defendant's Phone Calls as "Transacting Business"

The Court concludes that defendant's "regular" phone calls into the District of Columbia from elsewhere do not constitute "transacting business" in the District of Columbia. The Court may not assert specific jurisdiction over defendant based on such contacts alone. See, e.g., Gibbons & Co. v. Roskamp Inst., Civil No. 06-720, 2006 U.S. Dist. LEXIS 60762 at *9-*10 (D.D.C. Aug. 28, 2006) (finding 50 to 75 phone calls and emails from Florida defendant to the District of Columbia prior to signing of contract in Florida insufficient to establish that defendant "transacted business" in D.C. under D.C. Code § 13-423(a)(1)); Jung v. Assoc. Amer. Med. Coll., 300 F. Supp. 2d at 131 (finding non-forum defendants' contacts with the forum – up to ten times per year – insufficient to establish that defendant "transacted business" in forum under D.C. Code § 13-423(a)(1)); Comsat Corp. v. Finshipyards S.A.M., 900 F. Supp. at 523 (finding approximately eleven instances of contact – in the form of faxes and phone calls – between non-forum defendant and forum, several of which were initiated by non-forum defendant, insufficient to establish that defendant "transacted business" in forum under D.C. Code § 13-423(a)(1)); Rahal v. Paris Sec. Corp., Civil Action No. 82-1439, 1982 U.S. Dist LEXIS 17867, *2, *6 (D.D.C. Oct. 27, 1982) (finding that "at least" 30 phone calls between non-forum defendant and

plaintiff, approximately half of which were initiated by defendant, and during which defendant allegedly provided fraudulent information, insufficient to establish that defendant "transacted business" in forum under D.C. Code § 13-423(a)(1));  Textile Museum v. F. Eberstadt & Co., 440 F. Supp. 30, 31-33 (D.D.C. 1977) (finding 74 instances of mailed correspondence initiated by non-forum defendant and one personal consultation in the forum with the non-forum service provider insufficient to establish that defendant "transacted business" in forum under D.C. Code § 13-423(a)(1)); see also Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1076-77 (10th Cir. 1995) (non-forum defendant's phone calls and 10 to 20 faxes to in-forum plaintiff during course of contract negotiation insufficient to establish minimum contacts under transacting business prong of state long-arm statute).

The situation presented to Judge Pratt in Rahal is the most factually similar to the case at bar. See Rahal v. Paris Sec. Corp., 1982 U.S. Dist. LEXIS 17867. In that case, the plaintiff, from his office in the District of Columbia, contacted defendant, a New York securities firm, in order to establish positions in frozen orange juice futures. See id. at *2. As in the instant case, the contract formalizing the relationship was executed by the plaintiff outside the District of Columbia and all correspondence was sent to plaintiffs' home in Maryland. See id. The plaintiff alleged that there were at least 30 phone calls between the defendant in New York and the plaintiff from his office in the District of Columbia; half of these were initiated by the non-forum defendant. See id. at *3. Plaintiff further alleged that the defendant made a number of misrepresentations over the phone that led to economic injury. See id. at *3. These in-forum "contacts" notwithstanding, Judge Pratt found it "clear that the overwhelming number of operative events occurred at the defendants' offices in New York or on the floor of the New York

Cotton Exchange." Id. at *12.  As a result, the court was forced to "conclude[] that it lack[ed] personal jurisdiction over the defendants." Id. at *11.

Recent cases involving phone, fax and email contacts with the District of Columbia do nothing to undermine Judge Pratt's analysis in Rahal.  See, e.g., Gibbons & Co. v. Roskamp Inst., Civil No. 06-720, 2006 U.S. Dist. LEXIS 60762 at *9-*10 (D.D.C. Aug. 28, 2006) (finding 50 to 75 phone calls and emails from Florida defendant to the District of Columbia prior to signing of contract in Florida insufficient to establish that defendant "transacted business" in D.C. under D.C. Code § 13-423(a)(1)); Kopff v. Battaglia, 425 F. Supp. 2d 76, 79-82 (D.D.C. 2006) (finding approximately one-hundred faxes sent into the District of Columbia to solicit business insufficient to constitute "transacting business" under D.C. Code § 13-423(a)(1)); Brunson v. Kalil & Co., 404 F. Supp. 2d 221, 234 (D.D.C. 2005) (finding "limited" phone and fax contact with the District of Columbia insufficient to establish that defendant "transacted business" in D.C. under D.C. Code § 13-423(a)(1)).

Similarly, in this case plaintiffs' $2 million investment made while IFX was alleged to be in business with Titan was apparently made in London, see Am. Compl. ¶ 23;[2] Cruden, an alleged agent of defendant, made "regular" calls into the District of Columbia, also presumably from IFX's London offices, see Am. Compl. ¶¶ 15, 18, 21, 23;[3] and, as in Rahal,

---

[2]     Where, precisely, plaintiffs agreed to make the final $2 million investment with Titan is one of many factual details plaintiffs fail to allege with sufficient particularity, notwithstanding the fact that such details are certainly within plaintiffs' knowledge. Nevertheless, it is sufficient to note that nowhere do the plaintiffs allege that the final $2 million investment was made in or from the District of Columbia.

[3]     Plaintiffs also fail to allege with any particularly the origin of Cruden's calls to Eisenberg.  The Amended Complaint implies that Cruden was located in London at the time of the calls, see Am. Compl. ¶¶ 15, 21, but it is sufficient to note that plaintiffs nowhere allege that

plaintiffs allege that these calls contained misrepresentations that induced plaintiffs to invest with

Titan.  See id. ¶ 15.  For reasons virtually identical to those discussed by Judge Pratt in Rahal,

this Court finds that London is the locus of the "overwhelming number of operative events" in

the dispute between plaintiffs and IFX.  See Rahal v. Paris Sec. Corp., 1982 U.S. LEXIS 17867

at *12.  Thus, under the relevant case law, plaintiffs have failed to establish that defendant

"transacted business" in the District of Columbia.

### D. Conspiracy Jurisdiction

Plaintiffs next claim that there is personal jurisdiction over defendant pursuant to

the conspiracy theory of jurisdiction.  See Opp. at 12.  The Court finds that plaintiffs have failed

to allege facts sufficient to establish personal jurisdiction in this Court over IFX's alleged co-

conspirator, Titan.  Because plaintiffs have failed to demonstrate that this Court may exercise

jurisdiction over IFX's co-conspirator, the Court may not exercise jurisdiction over IFX under

the doctrine of conspiracy jurisdiction.

### 1. Standard

Although plaintiffs cite no statutory basis for their conspiracy jurisdiction claim,

the Court assumes they rely on the agency provision of D.C. Code § 13-423(a)(1) (jurisdiction

may be based on acts taken directly "or by an agent").  Conspiracy jurisdiction under Section 13-

423(a)(1) assumes that "[p]ersons who enter the forum and engage in conspiratorial acts are

deemed to 'transact business' there 'directly'; co-conspirators who never enter the forum are

deemed to 'transact business' there 'by an agent.'"  Second Amendment Found. v. U.S.

_____

the calls were made from within the District of Columbia.

Conference of Mayors, 274 F.3d 521, 523 (D.C. Cir. 2001) (quoting D.C. CODE § 13-423(a)(1)).

In order to attribute the acts of one co-conspirator to another for jurisdictional purposes, plaintiffs

must adequately allege "(1) the existence of a civil conspiracy . . . (2) the defendant's

participation in the conspiracy, and (3) an overt act by a co-conspirator 'within the forum, subject

to the long-arm statute, and in furtherance of the conspiracy.'" Kopff v. Battaglia, 425 F.

Supp. 2d at 81-82 n.4 (citing Jin v. Ministry of State Security, 335 F. Supp. 2d 72, 78 (D.D.C.

2004) and Jung v. Assoc. Amer. Med. Coll., 300 F. Supp. 2d at 141); see also World Wide

Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1168 (D.C. Cir. 2002), *cert. denied,*

537 U.S. 1187 (2003) ("[T]o establish jurisdiction under a theory of civil conspiracy, the plaintiff

must plead with particularity 'overt acts within the forum taken in furtherance of the

conspiracy.'"); Second Amendment Found v. U.S. Conference of Mayors, 274 F.3d at 524

(applying conspiracy theory of personal jurisdiction to long-arm statute's "transacting business"

subsection) (citing Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1030-31

(D.C. Cir. 1997)); First Chicago Int'l v. United Exch. Co., 836 F.2d at 1377-78; Edmond v. U.S.

Postal Serv. Gen. Counsel, 949 F.2d at 424-425 (discussing application of conspiracy theory

under Section 13-423(a)(3)).  So long as any one co-conspirator commits at least one overt act in

the forum jurisdiction sufficient to establish long-arm jurisdiction over that person and the act

committed is in furtherance of the conspiracy, there is personal jurisdiction over all members of

the conspiracy.  See Jung v. Assoc. Amer. Med. Coll., 300 F. Supp. 2d at 141.

   Courts in this circuit have applied the test for co-conspirator jurisdiction "warily"

in order "to prevent a broad extension of long-arm jurisdiction . . . ." Dooley v. United

Technologies Corp., 786 F. Supp. at 78.  To prevent the doctrine of conspiracy jurisdiction from

permitting an end run around the due process requirement of jurisdiction, courts require parties to "plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." Id. (citing cases); see also World Wide Minerals, Ltd. v. Republic of Kazakstan, 296 F.3d at 1168. "We cannot allow plaintiffs to subvert the important constitutional principles of sovereignty and due process that underlie personal jurisdiction with mere 'unspecified and unsubstantiated claims . . . .'" Edmond v. U.S. Postal Serv. Gen. Counsel, 949 F.2d at 428 (Silberman, J., concurring in part, dissenting in part).

Based on these requirements, the Court must determine whether plaintiffs have pled facts sufficient to create conspiracy jurisdiction over IFX, the only defendant named in this case. In order to meet the standard outlined above, plaintiffs must first allege that at least one alleged co-conspirator of the defendant committed at least one act in furtherance of the conspiracy within the District of Columbia that was sufficient to subject the alleged co-conspirator to jurisdiction under the D.C. long-arm statute. See Jin v. Ministry of State Security, 335 F. Supp. 2d at 83 (examining whether non-party co-conspirators had sufficient contacts with the forum to permit the court to assert jurisdiction over the non-party before considering whether jurisdiction could be asserted over defendant as a co-conspirator). Only if this Court could have exercised long-arm jurisdiction over that co-conspirator (had that co-conspirator been sued), will it be able to reach IFX through the alleged conspiracy. See id. at 78 ("Courts consider conspiracy jurisdiction a form of long-arm jurisdiction in which the defendant's 'contact' with the forum consists of the acts of the defendant's co-conspirators within the forum."). A careful reading of the amended complaint demonstrates that the only possible co-conspirator that could satisfy the test is Titan. Thus, the Court must consider Titan's contacts with the District of Columbia during

the period that Titan and IFX are alleged to have been co-conspirators.  If plaintiffs have alleged

contacts during this period sufficient to permit the Court to exercise jurisdiction over Titan, and

also alleged facts sufficient to establish a conspiracy between IFX and Titan, then the Court can

exercise conspiracy jurisdiction over IFX.

### 2. Titan's Alleged Contacts with the District of Columbia

Plaintiffs' amended complaint alleges that Titan had the following contacts with

the District of Columbia during the period that Titan and IFX are alleged to have been co-

conspirators: between the unspecified date in 2002 when IFX allegedly partnered with Titan and

an unspecified date in 2003, Titan sent account statements to Eisenberg in the District of

Columbia., see Am. Compl. ¶¶ 10, 13, 15; Titan agent Knott contacted Eisenberg at least twice

by unspecified means on unspecified dates, once "in or about 2002" to notify Eisenberg that

Titan had partnered with IFX, and again during the same time period to "induce" Eisenberg to

come to London, see id. ¶¶ 15, 18; and Titan board member Lawrence Lichtenstein sent a copy of

an allegedly fraudulent deposit slip to Eisenberg in the District of Columbia after Eisenberg

demanded that his funds be returned.  See id. ¶¶ 26.[4]

---

[4]        The amended complaint also alleges that Titan agent Knott met with Eisenberg
"several times" in the District of Columbia "in 2001 and 2002."  See Am. Compl. ¶ 14.
Plaintiffs specify neither the dates of these visits, see id. ¶ 14, nor the date on which IFX became
Titan's business partner.  See id. at 15. Based on plaintiffs' ambiguous complaint, the Court is
unable to determine whether these visits occurred during the period that Titan and IFX are
alleged to have been co-conspirators.  The burden of demonstrating facts sufficient to establish
personal jurisdiction lies with the plaintiff.  See, e.g., Second Amendment Found. v. U.S.
Conference of Mayors, 274 F. 3d at 524 (noting that burden of establishing pertinent
jurisdictional facts lies with plaintiff).  Further, these facts – the dates of the meetings between
Eisenberg and Knott – are within the plaintiffs control.  The Court therefore will treat plaintiffs'
failure to attribute these contacts to the period that Titan and IFX are alleged to have been co-
conspirators as a concession that these contacts did not occur during that period.  As a result, the

These contacts between Titan and the District of Columbia are similar – and similarly deficient – to the contacts plaintiff alleges between IFX itself and the District of Columbia, discussed in Part II.C.2 above.  Plaintiffs have alleged that Titan made an unspecified – but undoubtedly small – number of mailings, see Am. Compl. ¶¶ 10, 13, 15, 26, and two phone calls into the District of Columbia.  See id. ¶¶ 15, 18.  After considering plaintiffs' allegations regarding Titan's contacts with the District of Columbia, the Court concludes that it could not exercise long-arm jurisdiction over Titan had it been sued in this case.  See Am. Compl. ¶¶ 15-27; but see FC Inv. Group v. Lichtenstein, 441 F. Supp. 2d 3, 7 (D.D.C. 2006).[5]  Because the Court could not exercise specific jurisdiction over Titan, it may not exercise conspiracy jurisdiction over Titan's alleged co-conspirator, defendant IFX.  See Kopff v. Battaglia, 425 F. Supp. 2d at 81 n.4 (noting that acts of co-conspirator must fall within the scope of the long-arm statue).  In sum, plaintiffs have failed to allege facts sufficient for this Court to assert conspiracy jurisdiction over IFX.  The Court therefore need not reach the question of whether plaintiffs' complaint may be read to properly allege a conspiracy between Titan and IFX.

---

Court will not consider these alleged contacts in determining whether or not it may exercise conspiracy jurisdiction over IFX.

[5]        In FC Investment Group v. Lichtenstein, 441 F. Supp. 2d 3, 7 (D.D.C. 2006), Judge Collyer asserted the court's personal jurisdiction over Titan Board of Directors member and attorney Lawrence Lichtenstein based on similar facts.  With respect, for purposes of conspiracy jurisdiction analysis, this Court concludes that it would lack jurisdiction over non-party Titan based on the established line of cases cited in Part II.C.2 above.

*E. Personal Jurisdiction under the*
*Racketeer Influenced and Corrupt Organizations Act ("RICO")*

Finally, plaintiffs appear to assert personal jurisdiction based on the nationwide service of process provision of the RICO statute, 18 U.S.C. § 1965.  See Am. Compl. ¶¶ 47-59; Opp. at 16.  Plaintiffs again fail to specify the appropriate statutory basis for their implied assertion of RICO jurisdiction.  See Opp. at 16 (incorrectly citing 18 U.S.C. § 1962(d) as the basis for jurisdiction).  Plaintiffs cite no cases construing the RICO service of process provision in this or in any other circuit, but instead baldly assert that "because IFX is alleged to have violated the conspiracy section of the RICO statute . . . conspiracy jurisdiction applies."  Id.

The precise jurisdictional scope of the RICO nationwide service of process provision, 18 U.S.C. § 1965, is unsettled in this circuit.  See AGS Int'l Serv. S.A. v. Newmont USA Ltd., 346 F. Supp. 2d 64, 86 (D.D.C. 2004) (Walton, J.).  The basic question regarding the scope of Section 1965 is whether it permits a court to consider a defendant's *nationwide* contacts in analyzing jurisdiction.  Judge June Green concluded in Dooley that a plaintiff's jurisdictional burden is met under Section 1965 "by showing that a defendant has contacts with the United States.  Minimum contacts with the forum . . . [are] not necessary [and a] defendant's contact with the United States is sufficient to satisfy the requirements of due process."  Dooley v. United Technologies Corp., 786 F. Supp. at 71 (Green, J.).  More recently, however, Judges Lamberth and Walton have rejected the nationwide contacts test of Dooley, and held that Section 1965(a) requires the Court to determine whether at least one defendant had minimum contacts within the forum.  See World Wide Minerals v. Republic of Kazakhstahn, 116 F. Supp. 2d 98, 107-08 (D.D.C. 2000) (Lamberth, J.), *remanded on other grounds*, 296 F.3d 1154; see also AGS Int'l

Services S.A. v. Newmont USA Ltd., 346 F. Supp. 2d at 86-87 (Walton, J.).  Thus, under Judge

Lamberth's and Judge Walton's approach, Section 1965(a) still requires sufficient minimum

contacts within the district.  See also PT United Can Co. v. Crown Cork & Seal Co., 138 F. 3d

65, 71 (2d Cir. 1998) ("[A] civil RICO action can only be brought in a district court where

personal jurisdiction based on minimum contacts is established as to at least one defendant.");

AGS Int'l Services S.A. v. Newmont USA Ltd., 346 F. Supp. 2d at 87.

　　　　This Court is persuaded by the analysis of Judge Lamberth in World Wide

Minerals and Judge Walton in AGS International Services.  Thus, in considering plaintiffs' RICO

jurisdiction claim, the Court will read Section 1965(a) to require that at least one defendant have

had minimum contacts with the District of Columbia.  Plaintiffs, however, have failed to allege a

single additional fact in their RICO argument that would change the Court's previous conclusion

with regard to personal jurisdiction.   See Opp. at 16 (asserting RICO jurisdiction over defendant

without alleging any additional contacts).  As a result, Titan and IFX's contacts with the District

of Columbia in the RICO analysis are the same as those alleged in the context of the D.C. long-

arm statute, D.C. Code § 13-423(a), discussed above. The Court has already determined that

neither IFX nor Titan had contacts with the District of Columbia sufficient for this Court to assert

jurisdiction over either party under D.C. Code § 13-423(a)(1).  Plaintiffs have failed to meet their

jurisdictional burden under Section 1965(a) as described in World Wide Minerals and AGS

International Services.  As a result, this Court may not exercise RICO jurisdiction over IFX.

III. CONCLUSION

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over defendant IFX Markets, Ltd. and therefore grants its motion to dismiss.

An Order consistent with this Opinion shall be issued this same day.


_/s/_____
PAUL L. FRIEDMAN
DATE: February 6, 2007                    United States District Judge